**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JANET G. FERGUSON,

           Plaintiff,

vs.   Case No. 3:13-cv-206-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Janet G. Ferguson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is due to "[f]ibromyalgia, depression, [h]igh blood [p]ressure, migrain[e]s, degenerat[ive] di[sea]se in hips and shoulders[.]" Supplemental Transcript of Administrative Proceedings (Doc. No. 22; "Tr."), filed July 11, 2013, at 147.[2] On about June 25, 2001, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of January 9, 2001. Tr. at 93-95, 482-85. Plaintiff's applications were denied initially, see Tr. at 80-81, 477-78, and were denied upon reconsideration, see Tr. at 75-76, 471-73.

---

    [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed May 8, 2013; Reference Order (Doc. No. 17), entered May 9, 2013.

    [2] The Transcript of Administrative Proceedings (Doc. No. 14) was originally filed on May 6, 2013, but it was missing some pages, so the Commissioner filed the Supplemental Transcript that includes all pages for Plaintiff's claims.

On August 31, 2004, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 494-540. The ALJ issued a decision on January 21, 2005, finding Plaintiff not disabled through the date of the decision. Tr. at 25-38. The Appeals Council received additional evidence in the form of a letter from Plaintiff's counsel, Tr. at 7, and on March 10, 2007, the Appeals Council denied Plaintiff's request for review, Tr. at 4-6, 571-73 (duplicate), thereby making the ALJ's decision the final decision of the Commissioner. On May 7, 2007, Plaintiff commenced an action in this Court, seeking judicial review of the Commissioner's final decision. See Compl. (Doc. No. 1), No. 3:07-cv-383-J-HTS (M.D. Fla.). On February 15, 2008, the Honorable Howard T. Snyder, United States Magistrate Judge, entered an Opinion and Order reversing the Commissioner's final decision and remanding the matter for further proceedings.[3] Tr. at 575-602; see Opinion and Order (Doc. No. 23), No. 3:07-cv-383-J-HTS (M.D. Fla.).

On March 28, 2008, the Appeals Council entered an order remanding Plaintiff's claims to an ALJ in accordance with Judge Snyder's Opinion and Order. Tr. at 605. The same ALJ held three (3) additional hearings, during which the ALJ heard testimony from the following persons: Plaintiff, who was represented by counsel during all proceedings; Olin Hamrick, a licensed clinical psychologist ("Dr. Hamrick"); Edward Griffin, a board certified internist ("Dr. Griffin"); and a VE. Tr. at 836-40 (August 7, 2008 hearing), 888-962 (August 12, 2009

---

[3] Judge Snyder identified ten (10) specific errors that needed to be addressed on remand. See Tr. at 600-01; Opinion and Order (Doc. No. 23), No. 3:07-cv-383-J-HTS (M.D. Fla.), at 26-27. Some of those errors had to do with the medical opinion of Umesh M. Mhatre, M.D., P.A., one of the medical opinions at issue in the instant case.

hearing), 963-1031 (February 18, 2009 hearing).[4]  The ALJ issued a Decision on January 4, 2010, denying Plaintiff's claims, and finding her not disabled through the date of the Decision. Tr. at 552-70. Through counsel, Plaintiff submitted to the Appeals Council written exceptions addressing what Plaintiff believed to be error on the ALJ's part. Tr. at 546-48. On December 28, 2012, the Appeals Council "found no reason under [the Social Security Administration's] rules to assume jurisdiction." Tr. at 541. Therefore, the ALJ's Decision dated January 4, 2010 became the final decision of the Commissioner. On February 25, 2013, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances two main arguments on appeal. See Brief of Plaintiff in Support of Her Social Security Appeal (Doc. No. 23; "Pl.'s Br."), filed July 31, 2013.[5]  First, Plaintiff contends the ALJ erred in his evaluation of the medical opinions in the administrative transcript. Pl.'s Br. at 5. Second, Plaintiff argues the ALJ erred in assessing Plaintiff's credibility. Id. On September 30, 2013, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Def.'s Mem.") responding to Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings as explained herein. Specifically, the undersigned finds that the ALJ erred in the consideration of the medical opinions in the

---

[4] A partial transcript of this hearing is found at Tr. at 841-87. Although a VE was present at the February 18, 2009 hearing, she was not called to testify. Tr. at 965, 1029-30.

[5] All citations to page numbers of Plaintiff's Brief refer to the page numbers assigned by the Court's electronic case filing system.

record (Plaintiff's first issue). Because the ALJ's further consideration of the medical opinions may have an impact on the factual findings relating to Plaintiff's second issue regarding the ALJ's credibility finding, the second issue is not addressed by the Court. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 552-70. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January 9, 2001, the alleged disability onset date." Tr. at 555 (emphasis and citation omitted). At step two, the ALJ found Plaintiff "has the following severe impairments: a history of fibromyalgia, sleep apnea, obesity, status post cervical fusion and a dysthymic disorder[.]" Tr. at 555 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 555 (emphasis and citation omitted).

> The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) and [§] 416.967(b) except [Plaintiff] can[]not crawl or kneel and should not lift above shoulder level. She can[]not climb ladders, ropes and/or scaffolds and can only occasionally climb ramps and stairs. [Plaintiff] is limited to performing unskilled work, consisting of simple, repetitive, rote activities, without strict production goals or quotas. She should work with things rather than people. [Plaintiff] must have ready and available access to a restroom.

Tr. at 556 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any of her past relevant work" as an "[a]ssistant retail manager," a "[r]etail/cashier/stocker/storekeeper," or a "[s]ales promotion representative[.]" Tr. at 568 (emphasis and citation omitted from first quotation). At step five, after considering Plaintiff's age (forty (40) years old on the alleged disability onset date; forty-five (45) years old on her date last insured; and forty-nine (49) years old when the ALJ's Decision was rendered), education (at least a high school education), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can

perform." Tr. at 568 (emphasis and citations omitted). Relying on testimony of the VE, the ALJ identified as representative jobs the following: "[w]arehouse checker," "[d]elivery marker," "[t]icketer," "[t]able worker," "[s]urveillance system monitor," and "[a]ddresser[.]" Tr. at 569.  The ALJ concluded that Plaintiff "has not been under a disability . . . from January 9, 2001 through the date of th[e D]ecision." Tr. at 570 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues that the ALJ erred when he "rejected the marked limitations imposed by the examining psychologist[, Umesh M. Mhatre, M.D., P.A. ("Dr. Mhatre"),] by relying on unsupported assumptions, errors, and mischaracterizations of the record and the findings of the medical expert," Dr. Hamrick. Pl.'s Br. at 17 (emphasis omitted).

### A. Applicable Legal Framework

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical

---

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v.

---

[8] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981)

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and

supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

### B.  Summary of Medical Opinions at Issue

On January 19, 2004, Dr. Mhatre saw Plaintiff for a psychiatric evaluation. Tr. at 369-71A. Dr. Mhatre observed that Plaintiff's "mood [wa]s depressed and she cried repeatedly during the interview." Tr. at 371. Plaintiff's "[c]ognition [wa]s intact for orientation and memory, but on a day-to-day basis she ha[d] a problem remembering things." Tr. at 371-71A. Dr. Mhatre also noted that Plaintiff's "insight and judg[]ment [were] marginal" and "[c]onversation was goal orientated, but non-spontaneous." Tr. at 371A. Plaintiff's "[c]omprehension was good and concentration was marginal." Tr. at 371A. Dr. Mhatre opined as follows: Plaintiff's "primary problem is multiple physical problems and pain. Her depression is secondary to her physical problems, but is significant enough to cause some difficulties." Tr. at 371A.

Dr. Mhatre's Axis I impressions were "[m]ajor [d]epression, chronic, recurrent (no evidence to mania in the past reported)"; and "[h]istory of [s]ubstance [a]buse in the past, in remission now." Tr. at 371A. Dr. Mhatre's Axis III impressions were as follows: "[a]llergic to [c]odeine; questionable seizures; fractured hip; fibromyalgia; hysterectomy; bulging disc in the back; ofractomy; [and] arthritis." Tr. at 371A. Dr. Mhatre had the following impressions per Axis IV: "[c]urrent [s]tressors: unemployment; multiple medical problems; lack of access

-10-

to medical care due to financial difficulties." Tr. at 371A. Plaintiff's Global Assessment of Functioning ("GAF") score, according to Dr. Mhatre, was 50. Tr. at 371A.

Also on January 19, 2004, Dr. Mhatre completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). Tr. at 372-73. On that form, he assessed Plaintiff's ability to understand, remember, and carry out instructions as being slightly affected in some areas but not affected at all in other areas. Tr. at 372. As to Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures, Dr. Mhatre assessed Plaintiff with moderate to marked limitations. Tr. at 373. To support those limitations, Dr. Mhatre indicated that Plaintiff had "severe untreated [d]epression." Tr. at 373.

On September 8, 2008, Dr. Mhatre examined Plaintiff again. Tr. at 760-64. Dr. Mhatre administered a "Zung Test for Depression" and noted that Plaintiff's results of that test "plac[ed] her in extreme to severe depression consistent with clinical findings." Tr. at 763. Dr. Mhatre noted that Plaintiff "cried repeatedly during the interview clearly showing significant depression which has been untreated for the last several years and had failed treatments in the past." Tr. at 763. Dr. Mhatre indicated that Plaintiff's "depression [wa]s multi-origin." Tr. at 764. Her depression was largely "due to significant marital problems and multiple failed marriages, and part of it [wa]s due to medical problems including chronic pain secondary to fibromyalgia." Tr. at 764.

Dr. Mhatre's impressions were generally the same in 2008 as they were in 2004. Compare Tr. at 371A, with Tr. at 764. Specifically, as to Axis I, Dr. Mhatre indicated Plaintiff suffered from "[m]ajor [d]epression [d]isorder, chronic, recurrent with past history of suicide attempt." Tr. at 764. As to Axis III, Dr. Mhatre indicated Plaintiff is "[a]llergic to codeine; [she

had a] hysterectomy; neck surgery; D&C; morbid obesity; acid reflux disease, herniated disc in back causing muscle spasms; [and] fibromyalgia." Tr. at 764. Plaintiff's current stressors on Axis IV were "childhood physical abuse; multiple marriages; marital difficulties; chronic pain; multiple medical problems; [and] financial problems." Tr. at 764. Plaintiff's GAF score was again rated at 50. Tr. at 764.

In December 2008, Dr. Mhatre completed a Mental RFC Assessment form. Tr. at 767-68. On that form, Dr. Mhatre assessed Plaintiff's abilities in the following areas: understanding and memory; concentration and persistence; social interaction; and adaption. Tr. at 767-68.

Dr. Mhatre's opinions (among other opinions and evidence relating to Plaintiff's mental health) were discussed at the February 18, 2009 hearing by Dr. Hamrick. See Tr. at 996-1026. After summarizing in detail Dr. Mhatre's findings, Dr. Hamrick stated that "there seems to be some, some conflict or ambiguity" between Dr. Mhatre's 2004 and 2008 opinions. Tr. at 1014. He continued,

> There is some understanding that I believe would support the changes, some of the changes, and then other things that are just inconsistent. Like, for example, [Dr. Mhatre] gives the same GAF score of 50 on the two assessments. He has added a great deal of severity [in his 2008 opinion] to the ratings under concentration, pace and persistence with nothing in his narrative that would really account for that. . . . And under the social domain, I could understand the increases from lower to higher limitation based on her reports of some of the problems she had in the work setting and more detail about the problems she had in her marital relationships and family. So overall, I think that I don't see that in his narrative report that there is a basis for the marked limitation that he gave under concentration, pace and persistence. I do think that there is a basis for the marked limitations that he gave under social interactions.

Tr. at 1014-15.  Later in the hearing, Dr. Hamrick testified that "although [Dr. Mhatre] gave [Plaintiff] the same GAF in both [opinions], I think the evidence can be understood to indicate that [Dr. Mhatre] did see [Plaintiff] as worse off."  Tr. at 1017.

Notably, when referring to Dr. Mhatre's 2008 opinion, Dr. Hamrick testified that he would have assigned Plaintiff marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. at 1015 (referring to Tr. at 768).  Dr. Hamrick confirmed that he would have rated Plaintiff "as more severely impaired . . . in the social domain only" than Dr. Mhatre did in his 2008 opinion.  Tr. at 1022.  The following exchange then occurred between the ALJ and Dr. Hamrick.

> ALJ: Social domain. Yeah, but I mean if you can't function around people, then I assume, and can't respond to, you know, those kinds of things, it's going to be hard for you - - I mean I assume what you're trying to tell me, I mean tell me if I'm mistaken, is that the person wouldn't be able to sustain employment on an ongoing basis?
>
> [Dr. Hamrick]: Yes, sir.

Tr. at 1022.

There was also an exchange between Plaintiff's counsel and Dr. Hamrick at the end of the hearing regarding Dr. Hamrick's thoughts on Dr. Mhatre's 2004 opinion.  Tr. at 1026.  The exchange occurred as follows:

> [Dr. Hamrick]: Well, I don't think there's any context or surrounding evidence to support anything greater than what Dr. Mhatre said in 2004.
>
> [Plaintiff's counsel]: I'm not asking for greater. I'm just asking for what he said in 2004.
>
> [Dr. Hamrick]: Based on his one rating of marked impairment, I don't know whether or not that would meet the med-voc allowance rule. . . .
>
> [Plaintiff's counsel]: Okay. But you don't disagree with that finding?

-13-

[Dr. Hamrick]: No, I don't.

Tr. at 1026. Unfortunately, however, it is not clear whether Dr. Hamrick was stating that he did not disagree with Dr. Mhatre's entire 2004 opinion or only that he did not disagree with Dr. Mhatre's finding that Plaintiff would have marked limitations in her ability to respond appropriately to work pressures in a usual work setting. Tr. at 1026. Also of note, other than the discussion of what Dr. Hamrick himself would have found to be Plaintiff's limitations with respect to social functioning in 2008, he did not specifically opine as to limitations in other functional areas.

### C. Analysis of ALJ's Treatment of Medical Opinions

As to Dr. Mhatre, the ALJ stated in his Decision as follows:

> Dr. Mhatre's opinions of [Plaintiff's] mental functioning that were provided in 2004 and in 2008 can[]not be accepted. This is because, as noted by Dr. Hamrick, while both examination reports present essentially the same objective findings, the second medical source statement indicates a level of functioning significantly more severe than that in his first medical source statement. However, his first medical source statement is also of questionable validity. First, it is noted that Dr. Mhatre had indicated in his GAF assessment that [Plaintiff] had only moderate functional limitation. However, he indicated a marked limitation in regards to "responding appropriately to work pressures in a routine work setting[."] Dr. Hamrick confirmed that there was insufficient longitudinal evidence in regards to mental health treatment to support a finding of such limitation. As such, Dr. Mhatre's opinion in this regard is rejected.

Tr. at 567-68. As to Dr. Hamrick's opinion, the ALJ assigned it "the most weight." Tr. at 567. The ALJ reasoned that Dr. Hamrick "fully reviewed [Plaintiff's] mental health records as well as her medical records." Tr. at 567.

The ALJ erred in four (4) ways in his treatment of the opinions of Dr. Mhatre and Dr. Hamrick. First, Dr. Hamrick did note there were inconsistencies between Dr. Mhatre's two opinions and that Dr. Mhatre did not provide a narrative explanation of those inconsistencies.

-14-

Dr. Hamrick, however, did not testify that the opinions were completely unfounded as the ALJ implies.

Second, the ALJ's reason relating to the GAF scores is inaccurate. As conceded by Defendant, a GAF score of 50 is indicative of serious symptoms. See Def.'s Mem. at 7. In his Decision, however, the ALJ referred to a GAF score of 50 as translating to moderate symptoms, and he relied on this misconception to discredit Dr. Mhatre's findings. The ALJ's belief that the GAF score of 50 is inconsistent with marked limitations is simply incorrect. This error cannot be considered "harmless" as Defendant argues, see Def.'s Mem. at 8, because this error obviously had a significant effect on the ALJ's consideration of Dr. Mhatre's opinions.

Third, regardless of any confusion stemming from the exchange between Plaintiff's counsel and Dr. Hamrick as summarized above, it is clear at the very least that Dr. Hamrick did not disagree with Dr. Mhatre's 2004 assessment of a marked limitation in Plaintiff's ability to respond appropriately to work pressures in a usual work setting. If in fact the ALJ assigned "the most weight" to Dr. Hamrick's opinion, then the ALJ should have accepted that Plaintiff had a marked limitation in her ability to respond appropriately to work pressures in a usual work setting. Instead, the ALJ appears to have actually rejected without explanation that particular finding made by Dr. Mhatre and not disagreed with by Dr. Hamrick. The ALJ stated as much at one of the hearings. See Tr. at 906 (ALJ stating that "Dr. Hamrick suggested well, she might have a marked impairment in social functioning which I don't know that I agree with"). So, the ALJ effectively rejected both Dr. Mhatre's and Dr. Hamrick's opinions in this regard, instead electing to substitute his own judgment in terms of what

Plaintiff can do despite this marked limitation.  An ALJ is not permitted to substitute his own "judgment of [a] claimant's condition for that of the medical . . . experts."  Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

Fourth, in discrediting Dr. Mhatre's opinions, the ALJ stated that "Dr. Hamrick confirmed that there was insufficient longitudinal evidence in regard to mental heath treatment to support a finding of such limitation."  Tr. at 568.  This is simply inaccurate.  Dr. Hamrick agreed with the ALJ when questioned that "[a]s far as mental health treatment - - . . . goes, yes, sir, there is no evidence of any substantial ongoing treatment."  Tr. at 1016.  The ALJ mischaracterized Dr. Hamrick's testimony in this regard.

In sum, the undersigned finds that the ALJ erred in his assessment of Dr. Mhatre's and Dr. Hamrick's opinions.  These errors require remand for further consideration.

## V. Conclusion

Upon due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

        (A)     Reevaluate the medical opinions of record, especially the opinions of Drs. Mhatre and Hamrick, and state with particularity the weight afforded to each opinion and the reasons therefor;

        (B)     Ensure that the other issues raised in this appeal are appropriately addressed, if necessary; and

        (C)      Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 29, 2014.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of record